## A. B. KIRSCHBAUM CO. v. UNITED STATES.
### No. 207.

District Court, E. D. Pennsylvania.
July 17, 1930.

J. C. Peacock, of Philadelphia, Pa., for plaintiff.

Calvin S. Boyer, U. S. Atty., of Philadelphia, Pa.

DICKINSON, District Judge.

This case is a procedural mongrel. We have treated and entitled it as if an action in assumpsit, with a filed statement of claim as prescribed by the Pennsylvania Practice Act of 1915 (12 P. S. § 382 et seq.). We do this both because we do not know what else to do with it, and further because this is in accord with the wishes of the parties.

There are no facts in controversy. The question presented is a clear-cut question of law. A short outline fact statement will pre-

sent it. The plaintiff had a war contract for army coats, some of which had been made and were ready for delivery; some of which had not been made, and some not completed. The close of the war ended all need for the coats, and the United States "canceled" the contract, as the expression is used. The Secretary of War, under the authority given him by law to adjust with contractors claims under such conditions, agreed in 1919 with the plaintiff upon a settlement by which the plaintiff received an agreed sum for all coats which had been completely made under the war contract, and a less sum for all the other coats called for by the contract. A profit accrued to the plaintiff, and the present dispute is over what tax should be assessed upon this part of plaintiff's total taxable income. Among the many horrors of war is the inequality of the burdens which it imposes. To the many it is the occasion for sacrifice; to others not merely a source of gain, but often of inordinately great gains. It is allowable to suppose Congress had this in mind when it enacted the laws which control in this case. At all events the laws were passed. A thought in them is that, when an income tax comes to be levied, income the source of which was a war contract should pay a higher rate than other forms of income.

The plaintiff here may be said to have had two contracts. One, the first in time, was beyond doubt a war contract. If the profit, which later was received by the plaintiff, came from this contract, the tax which it has paid was properly assessed. The other contract was made after the war, and whatever gains flowed from it are admittedly to be taxed at a lower rate. This indicates clearly enough the question presented for a ruling.

We cannot withhold the statement that the argument addressed to us on behalf of the plaintiff is so admirable in form and substance that it is with a feeling very much like regret that we find ourselves unconvinced by it. We accept the proposition exhaustively maintained that the contracts are two, in the sense that the first was ended by the second, and thereafter the respective rights of the parties were to be determined wholly by the second contract. We accept also the doctrine that Congress alone can impose a tax, and that no executive nor administrative board nor the courts by construction can add to a tax imposed by Congress. The question is, what tax the act of Congress imposes, not what might, or in the opinion of some one, should have been imposed. It was necessary to employ words to express the kind of income upon which the higher tax was to be paid, and whatever these words mean, so is the law. The language of all laws, however, and emphatically of the tax laws, is directed to those whose obedience is demanded, and the meaning ascribed to the language used should be what he who is to obey would be justified in extracting therefrom. Distinctions and doctrines which have place in the law as a science should not pervert what the language of a statute clearly means. The laws to be here construed impose a tax on incomes, and a taxable income implies gains. These gains must have a source, and the source which Congress had in mind was a war contract. Congress chose the phrases "derived from" and "attributable to" war contracts. Were the gains which came to the plaintiff "derived from" or "attributable to" the war contract into which it had entered? The taxing officials and the Board of Tax Appeals held that they were, and we think they rightly so held. Clearly if there had been no such contract there would have been no gains. The truth, to which we agree, that the legal remedy of the plaintiff, if it had been compelled to enforce its contractual rights through and by an action at law, would have been upon the second contract, does not change the other truth that the source of the gains recovered would have been the earlier war contract.

All we are able to see in the second contract was an agreement upon the sum to which the plaintiff had a right under the first contract. In other words, it was an agreed assessment of the damages flowing from the noncompliance on the part of the defendant with the war contract. It is again true, as already more than once stated, that the legal obligation to pay the agreed sum was the agreement to so pay. This agreement is found in the second contract, and the first may well be said to be merely the inducement to the making of the second, but, as also before said, the legal obligation which is the basis of an action is not necessarily the test of the source of the gains which the plaintiff may recover in such action. It is a comfort to know that the conclusion reached has the sanction of the approval of Judge Hand in *Hoe & Co. v. Commissioner*, 30 F.(2d) 630. We see no inconsistency in the rulings of the Board in the instant case, and that in the *Goss Case*, 11 B. T. A. 365, nor does the reasoning of the opinion in the latter case support the argument (able although it is) addressed to us by counsel for the plaintiff.

We are of opinion that the plaintiff has disclosed no cause of action, and judgment should go against it. In view of the plead-

ings, we now enter no formal judgment, but leave to counsel to submit what is termed in the pleading a proper "decree or judgment" in accordance with this opinion.